FILED

GEORGE S. CARDONA
Acting United States Attorney
CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
KATHARINE SCHONBACHLER
Special Assistant United States Attorney
Asset Forfeiture Section
California Bar No. 222875
    Federal Courthouse, 14th Floor
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-6595
    Facsimile:  (213) 894-7177
    E-mail: Katie.Schonbachler@usdoj.gov

10 JAN 15 PM 12: 12

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY:_____

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| UNITED STATES OF AMERICA, | ) | NO. CV 10 - 00314 CBM AJWx |
|---|---|---|
| Plaintiff, | ) | VERIFIED COMPLAINT FOR FORFEITURE |
| vs. | ) | [18 U.S.C. §§ 981(a)(1)(A) and (C)] |
| ONE 2004 LAMBORGHINI GALLARDO; ONE 2004 HUMMER H2, SPORT UTILITY VEHICLE; ONE 2008 NISSAN 350Z; AND $15,000.00 IN U.S. CURRENCY, | ) | [U.S.S.S.] |
| Defendants. | ) | |

/ / /

/ / /

1

1      The United States of America brings this claim against the
2  defendants one 2004 Lamborghini Gallardo; one 2004 Hummer H2,
3  Sport Utility Vehicle; one 2008 Nissan 350Z; and $15,000.00 in
4  U.S. Currency (collectively, the "defendants") and alleges as
5  follows:

6  JURISDICTION AND VENUE

7      1.    This is a civil forfeiture action brought pursuant to
8  18 U.S.C. §§ 981(a)(1)(A) and (C).

9      2.    This court has jurisdiction over the matter under 28
10 U.S.C. §§ 1345 and 1355.

11     3.    Venue lies in this district pursuant to 28 U.S.C.
12 § 1395(b).

13 PERSONS AND ENTITIES

14     4.    The plaintiff is the United States of America.

15     5.    The defendants are $15,000.00 in U.S. Currency and
16 three vehicles more particularly described as follows:

17         a.    One 2004 Lamborghini Gallardo,
18             VIN: ZHWGU11S04LA01379;

19         b.    One 2004 Hummer H2, Sport Utility Vehicle,
20             VIN: 5GRGN23U14H114928; and

21         c.    One 2008 Nissan 350Z, VIN: JN1BZ34D38M702723.
22 The above listed vehicles are referred to collectively herein as
23 the "defendant vehicles," and individually by paragraph (e.g.,
24 "defendant vehicle 5(a)" refers to the defendant 2004
25 Lamborghini Gallardo).

26     6.    The interests of Raymond Mark ("Mark") and Marilu
27 Herrera ("Herrera") may be adversely affected by these
28 proceedings.

2

1    7.   The defendants were seized on July 1, 2009 and are in

2  the custody of the United States Secret Service, where they

3  shall remain subject to this court's jurisdiction during the

4  pendency of this action.

5                              BASIS FOR FORFEITURE

6    8.   Plaintiff alleges on information and belief that Mark,

7  a City of Los Angeles employee for over 19 years, carried out

8  and conducted a fraud scheme by stealing and misusing City of

9  Los Angeles fuel access cards on multiple occasions. Mark, along

10  with other individuals working with him,[1] would enter the City of

11  Los Angeles Bureau of Street Maintenance Facility located at

12  9401 Wentworth St., Los Angeles, California ("Wentworth

13  facility"), between approximately 11:30 p.m. and 4:30 a.m., and

14  take fuel access cards out of city vehicles that were parked at

15  the property overnight. Mark utilized these cards on multiple

16  dates to fill containers with fuel, and he also had a trailer

17  containing 325 gallon plastic bladders and 55 gallon drums that

18  he would fill with fuel from the Wentworth facility. Numerous

19  fuel transactions were completed with several different cards

20  each night, allowing fuel to be dispensed simultaneously or in

21  very close time increments.  Mark would then transport the

22  stolen fuel away from the Wentworth facility and sell it

23  _____

24         [1] At least one of these individuals, Nicholas Yeagley
    ("Yeagley"), admitted to Los Angeles Police Department
25  detectives that he was involved in this scheme with Mark and
    other individuals.  Yeagley was prosecuted in the Superior Court
26  of the State of California in The People of the State of
    California v. Nicholas Yeagley, Case No. PA 063291. On April 10,
27  2009, Yeagley plead nolo contendere to two counts of burglary
    involving the acts of Mark and his co-conspirators committed on
28  June 8, 2008 and July 12, 2008 in furtherance of the scheme.

1  (primarily for cash) to trucking companies and individuals for
2  use in their vehicles.

3       9.   The City of Los Angeles claims that it has sustained
4  monetary losses totaling approximately $200,000, as a result of
5  the fraudulent scheme.

6       10.   On July 12, 2008, a trailer holding containers filled
7  with fuel was found abandoned at 9545 Wentworth St., Los
8  Angeles, California (not far from the Wentworth facility). The
9  trailer had a broken tongue. Scrape marks were found on the
10 pavement from the trailer's broken tongue, leading from the
11 trailer directly to the Wentworth facility where the gas was
12 pumped. This fuel theft occurred after 4:00 p.m. on July 11,
13 2008 and before 6:00 a.m. on July 12, 2008, and involved
14 numerous transactions dispensed simultaneously or in very close
15 time increments, with several purchases of 50 gallons or less.
16 Several different fuel access cards were taken and used from the
17 city vehicles at the Wentworth facility on this occasion.

18 Mark's Ford F-150 Truck Used to Facilitate the Fraud Scheme

19      11.   Surveillance cameras from 9545 Wentworth Street, Los
20 Angeles, California provided images of a customized black Ford
21 F-150 truck leaving the broken trailer early on July 12, 2008. A
22 review of Department of Motor Vehicles ("DMV") records revealed
23 that Mark owned a black customized 2006 Ford F-150 truck which
24 was impounded in May 2009 due to an expired registration. This
25 truck strongly resembled the truck shown in the surveillance
26 video because it appeared to be the same model 4-door F-150
27 truck, with a similar lift kit, chrome bumpers, and chrome gas
28 cap cover. A review of "Google Maps" showed that a black Ford F-

4

150 truck with a lift kit and a large white fuel pod (similar to the fuel pods used in the fuel theft), was parked in front of Mark's residence.

12. According to the City of Los Angeles, Mark did not return to his employment at the Wentworth facility the Monday after the July 12 theft incident, but instead went on medical leave claiming that he had injured himself prior to Monday, July 14, 2008.

13. On April 23, 2009, Los Angeles Police Department ("LAPD") officers served a search warrant on Mark's residence, located in Palmdale, California,[2] where officers found 7 fuel containers (approximately five gallon in volume), one 30 gallon drum and several hoses which emitted the odor of fuel.

14. On April 27, 2009, Mark was arrested in the course of a DMV fraud case investigation while he was driving a Mustang. A search of Mark's personal property revealed a stolen City of Los Angeles fuel access card, which had been taken from a street sweeper parked at the Wentworth facility where it had been stored. There was no record of illegal activity on this card. The fuel access cards used to steal the fuel were similarly stolen from vehicles assigned to or stored at that location.

15. LAPD officers interviewed the registered owner of the Mustang that Mark was driving when he was arrested. The owner stated that Mark had loaned him (the owner) the Ford F-150 truck sometime in February of 2009, and that the vehicle's interior and exterior had emitted a strong distinctive odor of fuel.

---

[2] Home addresses and full bank account numbers have been redacted from this Complaint pursuant to Local Rule 79.5-4(e).

5

1  Additionally, the owner stated that there was a pump full of
2  fuel in the bed of the truck when he received it from Mark.
3       16.  On April 29, 2009, LAPD also served a search warrant
4  at an auto transport business in Los Angeles, California. During
5  the execution of the warrant, police interviewed Gevork Sukunyan
6  ("Sukunyan"), who identified himself as the person responsible
7  for an auto transport business, JP Logistics, Preferred Carrier,
8  and JP Transports. Sukunyan admitted to purchasing approximately
9  $17,000.00 in fuel from Mark, using both cash and checks in the
10 summer of 2008, which saved him (Sukunyan) approximately
11 $10,000.00. Sukunyan also stated that in early 2009 he
12 transported defendant vehicle 5(a) for Mark.
13 Pattern of Fuel Thefts
14      17.  Fuel thefts took place between the hours of 11:30 p.m.
15 and 4:30 a.m. The fuel thefts were carried out in numerous
16 transactions, during which fuel was dispensed simultaneously or
17 in very close time increments, with several purchases of 50
18 gallons or less, totaling up to 1,700 gallons each evening.
19 Several stolen fuel access cards were utilized each night a
20 theft occurred.
21      18.  On June 24, 2009, a supervisor of the Wentworth
22 facility was interviewed and confirmed that there were rarely
23 any vehicles being fueled between the hours of 4:00 p.m. and
24 7:00 a.m., and that the pumps normally got "no use" during those
25 hours. The supervisor added that from time to time during off-
26 hours there might be occasions when 20-30 gallons was fueled by
27 city employees "driving by in a city vehicle." The supervisor
28 also advised that his office was staffed from 7:30 a.m. until

3:30 p.m. every day, the pumps were visible from the desk in the office, and that it would be "impossible" to steal fuel quantities of this nature during this time period.

19. The pattern of fuel thefts set forth below shows an example of the amount of fuel stolen as a result of this scheme for the months prior to and after the theft which occurred at the Wentworth facility on July 11-12, 2008 (when the trailer carrying fuel broke):[3]

| Month | Gallons Stolen |
|---|---|
| April 2008 | 5822.2 |
| May 2008 | 10843 |
| June 2008 | 16848.7 |
| July 2008 | 6383.4 |
| August 2008 | 198.2 |
| September 2008 | 0 |
| October 2008 | 80.4 |
| **TOTAL** | **40175.9** |

20. Thefts significantly decreased after the July 11-12th incident when the broken trailer was abandoned. The small quantities of fuel stolen after the trailer broke were likely completed with 55 gallon drums placed in the bed of a truck. There have been no known fuel thefts after October of 2008. In

---

[3] There were additional fuel thefts in the months prior to April 2008. From July 2007 to October 2008, approximately 45,163.6 gallons of fuel were reportedly stolen from the Wentworth facility.

1  addition, a review of Mark's bank records reveals a substantial

2  increase in retail fuel purchases starting in September 2008.

3      21.   Historical prices for fuel in the summer of 2008, when

4  the majority of these fuel thefts occurred, were roughly $4.90

5  per gallon. According to Sukunyan's statement that he purchased

6  approximately $17,000.00 in fuel from Mark which saved him

7  approximately $10,000.00, this would roughly calculate to Mark

8  selling fuel for a 37% reduced rate, which computes to a rate of

9  $3.09 per gallon. Applying this rate, the amount of fuel stolen

10  from the Wentworth facility would have netted approximately

11  $139,555.52 ($3.09 x 45,163.6 gallons).

12  Finances Related To the Thefts

13      22.   The following check stubs were obtained during the

14  execution of the search warrant at JP Logistics and through a

15  review of bank records:

16          a.   Check #1730 from Sukunyan, in the amount of

17  $740.00, payable to "The Medusa Salon" (a business previously

18  owned by Mark), was deposited into the Washington Mutual Bank

19  Medusa Salon account ending with the last four digits 2784 on

20  May 27, 2008;

21          b.   Check #1745 from Sukunyan, in the amount of

22  $1,550.00, payable to "Raymond Mark," was deposited into the

23  Washington Mutual Bank Mark account ending with the last four

24  digits 8442 on June 6, 2009;

25          c.   Check #1748 from Sukunyan, in the amount of

26  $400.00, payable to "The Medusa Salon," was deposited into the

27  Washington Mutual Bank Medusa Salon account ending with the last

28  four digits 2784 on June 9, 2009;

1          d.   Check #1750 from Sukunyan, in an unknown amount,

2    payable to "Raymond Mark," was dated on June 7, 2008;

3          e.   Check #1728, written on May 21, 2009, in the

4    amount of $950.00, payable to "Medusa Salon," was deposited into

5    the Washington Mutual Bank Medusa Salon account ending with the

6    last four digits 2784 on May 22, 2009.

7     23.   Mark lived a lifestyle well beyond that which could be

8    afforded through his legitimately earned income through the City

9    of Los Angeles.   According to data supplied by the State of

10   California Employment Development Department ("EDD"), Mark's

11   reported legitimate income in 2008 was approximately $3,513.50 a

12   month.

13   Money Laundering

14    24.   Plaintiff alleges on information and belief that Mark

15   used his business, Medusa Salon & Spa, to launder the profits

16   acquired by the illegal sale of stolen City of Los Angeles fuel.

17   It is unclear what, if any, legitimate profits Mark made from

18   this hair salon business that opened sometime in 2006 and went

19   out of business at the end of 2008.   As discussed in paragraph

20   22 above, checks for the stolen fuel were being written to

21   Medusa Salon and deposited into the business account. A review

22   of bank records revealed that funds were frequently transferred

23   between two Medusa Salon & Spa bank accounts and Mark's two

24   personal bank accounts.

25    25.   Based on a review of bank records, Mark also holds a

26   substantial portion of cash outside of banks, funds which

27   Plaintiff alleges on information and belief were generated

28   through the repeated fuel thefts. Mark makes large purchases,

1  such as automobiles, by paying cash, generally using $100 in
2  U.S. currency, without any corresponding withdrawals from his
3  known bank accounts.

4      26.   Mark also functions as a check casher, in an effort to
5  launder his illicit funds. Bank records reflect that Mark
6  regularly deposited third party checks originally paid to the
7  order of Raymond E. Hale ("Hale") (payroll checks from the
8  Antelope Valley Foundation for the Developmentally Disabled) and
9  Nancy E. Mark (Social Security monthly checks). Hale informed
10 United States Secret Service ("USSS") special agents that for
11 about six months in 2008 he gave his checks to his stepfather
12 Mark and Mark would give him cash in return.  Bank records
13 indicate that at least $8,787.89 in checks were deposited by
14 Mark for Hale but these deposits were not followed by any
15 subsequent withdrawal activity which would correspond to
16 payments to Hale from funds in Mark's known bank accounts.

17     27.   The regular check deposits for Nancy E. Mark are also
18 not followed by any subsequent withdrawal activity which would
19 correspond to payments to her from funds in Mark's known bank
20 accounts. Plaintiff alleges on information and belief that Mark
21 was utilizing cash proceeds derived from his sale of stolen fuel
22 to cash checks for Hale and Nancy E. Mark.

23     28.   A review of bank records revealed that Mark's personal
24 and business accounts received both cash and check deposits that
25 Plaintiff believes were from the sale of stolen fuel. An
26 investigation of bank and automobile purchase records revealed
27 that the defendant vehicles were purchased with funds co-mingled
28 in various accounts, in an attempt to conceal the true origin of

1   the money. Mark also re-sold vehicles quickly to further launder
2   the money. For example, Mark was involved in the following
3   transactions:

4          a.   Mark purchased a 2003 Jaguar from McGrath Pacific
5   Auto Sales on May 11, 2009 with $10,292.00 in U.S. currency.
6   Less than one week later, he telephoned the dealer asking them
7   to try and sell both that car and defendant vehicle 5(a) for
8   him. DMV records show that he sold the Jaguar less than two
9   weeks after purchasing it.

10         b.   Mark purchased a 2002 BMW on Ebay in December
11  2008, for $15,000.00 in U.S. currency. On or around that same
12  day, Mark withdrew $17,000.00 cash out of his personal account
13  ending in the last four digits 8442. There was a deposit of
14  $7,900.00 that was made a few days prior to this withdrawal.
15  Plaintiff alleges on information and belief that the $7,900.00
16  cash deposit was proceeds from the cash sales of stolen fuel.
17  An interview with the previous owner of the BMW revealed that
18  Mark followed the previously described pattern for this car
19  purchase, i.e., by telephoning him and asking for assistance
20  selling the vehicle less than one week after purchasing it. Mark
21  offered to split any profits with the BMW seller.

22         c.   Herrera (Mark's girlfriend) purchased a 2006
23  Dodge Viper on May 27, 2008, paid for in part with a $25,000.00
24  cashier's check obtained with funds from Mark's personal bank
25  account, an account which received an $8,000 cash deposit the
26  same day. Mark's EDD reportable income for May 2008 was
27  $3,513.51. Plaintiff alleges on information and belief that the
28  $8,000 cash deposit was proceeds from the cash sales of stolen

1  fuel.   On December 1, 2008, the same Dodge Viper was traded in

2  for defendant vehicle 5(a), along with an additional $35,000 in

3  cash. Neither of these cash transactions originated from any of

4  Mark's known bank accounts.

5         d.    Mark purchased a 2003 Mercedes Benz on December

6  31, 2008, a transaction funded through a wire transfer of

7  $15,981 from his personal bank account ending in last four

8  digits 8442 to the auto dealership. Co-mingling of funds was

9  evidenced a few days prior, with several transfers between

10 various accounts. $9,000.00 was transferred from his business

11 account ending in the last four digits 2784 ("business account

12 1") to his business account ending in the last four digits 8434

13 ("business account 2"), $5,100.00 was transferred from business

14 account 2 to business account 1, $12,800.00 was transferred from

15 business account 2 to his personal account ending in the last

16 four digits 8442, and $15,981.00 was wired from his personal

17 account to an auto dealership for a car purchase.

18 Purchase of Defendant 2004 Lamborghini Gallardo

19      29.   On December 1, 2008, Herrera and Mark, using an

20 address in McAllen, Texas as their residence, purchased

21 defendant vehicle 5(a) from EuroCar, Inc. located in Costa Mesa,

22 California, using $35,000 in U.S. currency and two trade-in

23 vehicles. Mark had no reportable income in December to support

24 this transaction.

25      30.   One trade-in consisted of the Dodge Viper discussed

26 above. Further, Mark's bank records showed that on May 27, 2008,

27 Mark deposited $8,000 in cash and immediately ordered a

28 cashier's check from his bank account ending in the last four

1   digits 8442, made out to DCH Dodge for $25,000.  Plaintiff

2   alleges on information and belief that the $8,000 cash deposit

3   was proceeds from the cash sales of stolen fuel.

4       31.  On June 10, 2009, USSS special agents met with the

5   President of Eurocar, Inc. who stated that his main contact for

6   this transaction was Mark, and that the vehicle was picked up

7   via automotive transporter JP Logistics and, to his knowledge,

8   was shipped to McAllen, Texas.

9       32.  No substantial cash withdrawals prior to this purchase

10  from any of Mark's accounts have been found. Plaintiff alleges

11  on information and belief that the $35,000 paid toward the

12  purchase of defendant vehicle 5(a) was proceeds from the cash

13  sales of stolen fuel described above.

14  Purchase of Defendant 2004 Hummer H2

15      33.  On July 10, 2008, Mark, using an address in Lancaster,

16  California, purchased defendant vehicle 5(b) 2004 Hummer H2 from

17  C&M Auto Sales (dba TRADEINCARS) in El Paso, Texas, for $23,244

18  in U.S. currency.

19      34.  LAPD detectives interviewed the President of C&M Auto

20  Sales regarding this purchase. He verbally confirmed that

21  defendant vehicle 5(b) was purchased by Mark off Ebay on July

22  10, 2008. Mark paid a $500 debit card deposit and $22,244 in

23  U.S. currency, primarily in $100 denominations, upon arriving in

24  El Paso, Texas to pick up defendant vehicle 5(b) on July 13,

25  2008.

26      35.  No substantial cash withdrawals prior to this purchase

27  from any of Mark's accounts have been found.  Plaintiff alleges

28  on information and belief that the $22,744 paid toward the

1  purchase of defendant vehicle 5(b) was proceeds from the cash

2  sales of stolen fuel described above.

3  Purchase of Defendant 2008 Nissan 350Z

4      36.  On or before May 8, 2009, Mark, utilizing an address

5  in Palmdale, California, purchased defendant vehicle 5(c) from

6  an individual in Moreno Valley, California, with $14,000 in U.S.

7  currency. On June 19, 2009, USSS special agents interviewed the

8  previous owner of defendant vehicle 5(c).  He verbally confirmed

9  that Mark was the purchaser, who had paid him $14,000 in U.S.

10 currency, which consisted of only $100 bills.

11     37.  No substantial cash withdrawals prior to this purchase

12 from any of Mark's accounts have been found.  Plaintiff alleges

13 on information and belief that the $14,000 paid toward the

14 purchase of defendant vehicle 5(c) was proceeds from the cash

15 sales of stolen fuel described above.

16 Execution of Federal Seizure Warrants

17     38.  On July 1, 2009, federal seizure warrants were served

18 at Mark's residence in Palmdale, California.  The following were

19 seized from Mark's residence:

20          a.   Defendant vehicle 5(a);

21          b.   Defendant vehicle 5(b);

22          c.   Defendant vehicle 5(c); and

23          d.   A Bank of America cashier's check, account number

24 xxxxx5638, in the amount of $15,000.00.

25 The cashier's check was from the sale of a 2003 Mercedes Benz,

26 the purchase of which is discussed above.  The vehicle was sold

27 the day prior to the execution of the seizure warrant.

28

1      39.  During an interview, Mark admitted to being one of the

2   people stealing the fuel over the time period discussed above.

3   Mark is currently being prosecuted in the Superior Court of the

4   State of California in <u>The People of the State of California v.</u>

5   <u>Raymond Andrew Mark</u>, Case No. BA 357265.

6                            <u>CLAIMS FOR RELIEF</u>

7      40.  Plaintiff incorporates the allegations of paragraphs

8   1-39 above as though fully set forth herein.

9      41.  Based on the above, plaintiff alleges that the

10  defendants are subject to forfeiture to the United States

11  pursuant to 18 U.S.C. § 981(a)(1)(C) as property which

12  constitutes or is derived from proceeds traceable to violations

13  of 18 U.S.C. §§ 1029 and 1343. Further, the defendants are

14  subject to forfeiture to the United States pursuant to 18 U.S.C.

15  § 981(a)(1)(A) as property purchased with funds which were

16  involved in monetary transactions involving proceeds of fraud,

17  which transactions were designed to conceal or disguise the true

18  nature, source, location, ownership, or control of the proceeds

19  in violation of 18 U.S.C. §§ 1956(a)(1)(B).

20     WHEREFORE, plaintiff United States of America prays that:

21     (a)  due process issue to enforce the forfeiture of the

22  defendants;

23     (b)  due notice be given to all interested parties to

24  appear and show cause why forfeiture should not be decreed;

25     (c)  that this Court decree forfeiture of the defendants to

26  the United States of America for disposition according to law;

27  and,

28  / / /

1        (d)   for such other and further relief as this Court may

2   deem just and proper, together with the costs and disbursements

3   of this action.

4

5   DATED: January 15, 2010      GEORGE S. CARDONA
                                  Acting United States Attorney
6                                 CHRISTINE C. EWELL
                                  Assistant United States Attorney
7                                 Chief, Criminal Division
                                  STEVEN R. WELK
8                                 Assistant United States Attorney
                                  Chief, Asset Forfeiture Section
9
                                  _____
10                                KATHARINE SCHONBACHLER
                                  Special Assistant United States Attorney
11
                                  Attorneys for Plaintiff
12                                United States of America

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16

<u>VERIFICATION</u>

I, Derek Hagen, hereby declare that:

    1.   I am a Special Agent with the United States Secret Service and am the case agent for the forfeiture matter entitled <u>United States of America v. One 2004 Lamborghini Gallardo; one 2004 Hummer H2, Sport Utility Vehicle; One 2008 Nissan 350Z; and $15,000.00 in U.S. Currency</u>.

    2.   I have read the above Verified Complaint for Forfeiture and know its contents.  It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

    3.   Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed January 14, 2010 in Los Angeles, California.

DEREK HAGEN

17

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Consuelo B. Marshall and the assigned discovery Magistrate Judge is Andrew J. Wistrich.

The case number on all documents filed with the Court should read as follows:

## CV10- 314 CBM (AJWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

===========================================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

[X] **Western Division**
312 N. Spring St., Rm. G-8
Los Angeles, CA 90012

[ ] **Southern Division**
411 West Fourth St., Rm. 1-053
Santa Ana, CA 92701-4516

[ ] **Eastern Division**
3470 Twelfth St., Rm. 134
Riverside, CA 92501

Failure to file at the proper location will result in your documents being returned to you.

CV-18 (03/06)          NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| United States of America | One 2004 Lamborghini Gallardo; One 2004 Hummer H2, Sport Utility Vehicle; One 2008 Nissan 350Z; And $15,000.00 in U.S. Currency |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| KATHARINE SCHONBACHLER, Special Assistant United States Attorney<br>1400 United States Courthouse, 312 North Spring Street<br>Los Angeles, CA 90012, Telephone: (213) 894-6595, Fax: (213) 894-7177 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☑ 1 U.S. Government Plaintiff ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only (Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from another district (specify): ☐ 6 Multi-District Litigation ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No   ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)

18 U.S.C. §§ 981(a)(1)(A) and (C)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 530 General | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 535 Death Penalty | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | FORFEITURE / PENALTY | PROPERTY RIGHTS |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | REAL PROPERTY | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | REAL PROPERTY | ☐ 210 Land Condemnation | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | IMMIGRATION | ☑ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | | FEDERAL TAX SUITS |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | ☐ 463 Habeas Corpus-Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | ☐ 465 Other Immigration Actions | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | ☐ 440 Other Civil Rights | | |

**FOR OFFICE USE ONLY:   Case Number:**   CV10- 00314

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**VIII(a).  IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑No  ☐ Yes
If yes, list case number(s): _____

**VIII(b).  RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑No  ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:
(Check all boxes that apply)   ☐ A.  Arise from the same or closely related transactions, happenings, or events; or
                               ☐ B.  Call for determination of the same or substantially related or similar questions of law and fact; or
                               ☐ C.  For other reasons would entail substantial duplication of labor if heard by different judges; or
                               ☐ D.  Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX.  VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☑   Check here if the government, its agencies or employees is a named plaintiff.  If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐   Check here if the government, its agencies or employees is a named defendant.  If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
     Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

**X.  SIGNATURE OF ATTORNEY (OR PRO PER):** *Katharine Schonbachler*   Date January 15, 2010

Notice to Counsel/Parties:  The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law.  This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet.  (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended.  (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended.  (42 U.S.C. (g)) |